02-09-209-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00209-CR 

 

 


 
 
 Lawrence Edward Walker
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM County Criminal Court No. 9
OF Tarrant COUNTY

------------

OPINION

----------

I.  Introduction

          Appellant Lawrence Edward Walker
appeals his convictions for terroristic threat against a public servant and
hindering proceedings by disorderly conduct. 
In six issues, Appellant argues that the evidence is legally and
factually insufficient to support his convictions and that sections 22.07 and
38.13 of the penal code are unconstitutional as applied to him because they violate
his right to free speech.  We will
affirm.

II.  Procedural Background

          The State charged Appellant with the
offenses of terroristic threat and hindering proceedings by disorderly conduct.  Appellant pleaded not guilty to both
offenses.  After a jury found Appellant
guilty of both offenses, the trial court sentenced Appellant to 200 days in
jail and a $4,000 fine for each offense. 
The trial court then suspended Appellant’s sentences and placed him on
community supervision for twenty-four months for both offenses.  This appeal followed.

III.  Evidentiary Sufficiency

          In his first and second issues,
Appellant argues that the evidence is legally and factually insufficient to
support his conviction for terroristic threat. 
In his fourth and fifth issues, Appellant contends that the evidence is
legally and factually insufficient to support his conviction for hindering
proceedings by disorderly conduct.  The
court of criminal appeals recently held that there is “no meaningful
distinction between the Jackson v.
Virginia legal-sufficiency standard and the Clewis factual-sufficiency standard” and that “the Jackson v. Virginia standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.  All other cases to the contrary, including Clewis, are overruled.”  See
Brooks v. State, No. PD-0210-09, 2010
WL 3894613, at *8, 14 (Tex. Crim. App. Oct. 6, 2010).  Accordingly, we will apply the same standard
of review to all of Appellant’s sufficiency complaints.

          A.      Standard of Review

In reviewing the
sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim.
App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we “determine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.”  Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.      Applicable
Facts

On
October 23, 2008, Appellant went to County Criminal Court #4 (“the court”) and
filled out an application for a court-appointed attorney.  Judge Deborah Nekhom is the judge of the
court.  After Appellant was assigned an
attorney, he called Vincent Giardino, the court coordinator, and complained
about his attorney.  Giardino relayed
Appellant’s complaint to Judge Nekhom.

          On November 7, 2008, Appellant again
went to the court for docket.  Appellant
had been appointed a new attorney, Carey Walker.[1]  Upon entering the court, Carey introduced
himself to Appellant and asked Appellant to go into the hall with him to talk
about Appellant’s case.  Carey had no
prior communication with Appellant.

          After less than five minutes of
speaking with Appellant, Carey went back into the court and told Judge Nekhom
that he did not feel like he could continue to represent Appellant.  Judge Nekhom then called Appellant to
approach, and Appellant had a “smart-mouthed” and “very sarcastic” tone.  Judge Nekhom told Appellant that he needed to
cooperate with his attorney, and Appellant kept interrupting her.  Judge Nekhom then told Appellant that he
needed to hire his own attorney because he could not get along with the two
attorneys he had been appointed. 
Appellant stated something to the effect of “Well, I’m not going to do
that, so let’s just - - let’s go, girl.” 
Appellant held out his hands to be handcuffed.  Judge Nekhom then held Appellant in contempt
of court for three days for his behavior in the courtroom.  The bailiff escorted Appellant to the holding
cell.

           Judge Nekhom then got her court reporter,
Michelle Seay, to put her conversation with Appellant on the record.  The bailiff got Appellant from the holding
cell and brought him back out in front of Judge Nekhom.  Judge Nekhom then had essentially the same
conversation with Appellant, although this time it was recorded by Seay.

          After the second conversation, the
bailiffs were escorting Appellant back to the holding cell when Appellant stopped,
turned toward Judge Nekhom, “bowed his chest out,” and said, “Let’s do it,
Nekhom.  It’s me and you now.”  David Montgomery, a bailiff in Judge Nekhom’s
court, then opened the door to the holding cell area and quickly placed
Appellant inside.  After Appellant made
the statement, Judge Nekhom had to leave the courtroom to compose herself.

          C.      Terroristic Threat

          Appellant argues that the evidence is
insufficient because he did not make a threat nor did he “threaten to commit
any crime of violence.”  Appellant’s
sufficiency complaints center around his statement, “Let’s do it, Nekhom.  It’s me and you now.”

          Section 22.07 defines the offense of
terroristic threat.  Tex.
Penal Code Ann. § 22.07 (Vernon Supp. 2010).  The relevant portion of section 22.07
provides that a “person commits an offense if he threatens to commit any
offense involving violence to any person or property with intent to” “place any
person in fear of imminent serious bodily injury.”  Id.
§ 22.07(a)(2). 
Additionally, an offense under subsection (a)(2)
is a “Class B misdemeanor, except that the offense is a Class A misdemeanor if
the offense” “is committed against a public servant.”  Id.
§ 22.07(c)(2).

The
amended information alleged that Appellant

did then and there
intentionally threaten to commit an offense involving violence against a person
or property, namely by stating to Judge Deborah Nekhom “Let’s do it,
Nekhom.  It’s me and you now,” with
intent to place Judge Deborah Nekhom in fear of imminent serious bodily injury
and Judge Deborah Nekhom was a public servant, 
namely a Tarrant County criminal court judge.

 

In Dues v. State, the Texas Court of
Criminal Appeals stated:

          Therefore, in order to commit this
offense [terroristic threat] the accused must have the specific intent to place
any person in fear of imminent serious bodily injury . . . .  Intent can be inferred from the acts, words,
and conduct of the accused.  However, the
accused’s intent cannot be determined merely from what the victim thought at
the time of the offense.  Indeed, for
this offense to be completed it is not necessary that the victim or anyone else
was actually placed in fear of imminent serious bodily injury.  Additionally, it is immaterial to the offense
whether the accused had the capability or the intention to carry out his threat.  All that is necessary to complete the offense
is that the accused by his threat sought as a desired reaction to place a
person in fear of imminent serious bodily injury.

 

634
S.W.2d 304, 305–06 (Tex. Crim. App. 1982) (internal citations omitted); see also Swaringen v. State, No. 02-08-00132-CR,
2009 WL 579328, at *4–5 (Tex. App.––Fort Worth Mar. 5, 2009, no pet.) (mem. op., not designated for publication).

          Judge Nekhom testified that she took
Appellant’s statement, “Let’s do it, Nekhom. 
It’s me and you now,” as a threat.  She stated that she “feared imminent threat,
and he was certainly capable of injuring me. 
I was frightened.”  Judge Nekhom
testified that she felt that Appellant intentionally meant to put her in fear
because of his words, the tone of his voice, and his body language.  She stated that the entire morning Appellant
had been trying to upset her.  Additionally,
she stated that her daily routine has been affected since Appellant’s
statement.  Judge Nekhom testified that
she is more cautious when she goes places and that she is “very careful.”  She stated that it is her opinion that
Appellant is capable of causing her bodily harm.

          Giardino stated that he was escorting
Appellant to the holdover when Appellant stopped by the stairwell that led up
to Judge Nekhom’s bench, turned to face Judge Nekhom, “bowed his chest out,”
and stated something to the effect of “Let’s do it, Nekhom.  It’s just you and me now.”  Appellant was approximately five feet away
from Judge Nekhom when he made the statement. 
Giardino stated that Appellant looked angry and that he was not
handcuffed at this point.

          Carey testified that although
Appellant made no movement toward Judge Nekhom after he stated, “Let’s do it,
Nekhom.  It’s me and you now,” he
interpreted Appellant’s statement as a physical threat towards Judge Nekhom.

          Montgomery testified that he was
escorting Appellant to the holding cell when Appellant made the threatening
statement to Judge Nekhom.  He stated
that Appellant was not handcuffed. 
Montgomery then opened the door to the holding area and got Appellant
“away from the Judge to stop any further escalation of any possible
conflict.”  Montgomery stated that
Appellant turned toward Judge Nekhom when he made the threatening statement.  Montgomery stated that he did not have to
physically restrain Appellant after the statement.  He further stated that he took Appellant’s
statement as a threat and believed that Appellant intended to put Judge Nekhom
in fear.

          Chad Lee, a defense attorney,
testified that he went into Judge Nekhom’s courtroom during the middle of the
hearing with Appellant.  He stated that
Appellant kept talking over Judge Nekhom and that Appellant had “aggressive
body language.”  Lee stated that he took Appellant’s
statement as a “threatening remark towards the Judge.”

          Robert Hinton, an attorney, testified
that he was in the courtroom when Appellant made the statement to Judge Nekhom.  He stated that when Appellant made the
statement, his body language was “very threatening.  It was a stare, a fixed facial expression,
and it was a threat.”  He stated that the
statement was “chilling” and that he felt concerned for Judge Nekhom and for
the safety of the courtroom.  Hinton
stated that after the statement was made, there was “a hush in the courtroom.”

Appellant
contends that he did not make a threat to commit any crime of violence.  He asserts that his statement cannot be
interpreted as a threat on its face. 
However, all of the witnesses testified that they took Appellant’s
statement as a threat.  Additionally,
Giardino stated that Appellant “bowed his chest out” towards Judge Nekhom when
he made the statement.

Appellant
argues that his statement was not a threat because the bailiff did not take any
action to restrain him.  However,
Montgomery testified that after Appellant made the statement, he opened the
door to the holding area and got Appellant “away from the Judge to stop any
further escalation of any possible conflict.” 
As such, Montgomery did take action to immediately separate Appellant from
Judge Nekhom.

Viewing
the evidence in the light most favorable to the prosecution, we hold that any
rational trier of fact could have found the essential elements of the offense
of terroristic threat beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778.  The evidence is thus sufficient
to support Appellant’s conviction. 
Accordingly, we overrule Appellant’s first and second issues.

D.      Hindering
Proceedings by Disorderly Conduct

Appellant
argues that the evidence is insufficient to support his conviction for
hindering proceedings by disorderly conduct because his statement was not a
disturbance.

Section
38.13 of the penal code provides that “[a] person commits an offense if he
intentionally hinders an official proceeding by noise or violent or tumultuous
behavior or disturbance.”  Tex. Penal Code Ann. § 38.13(a) (Vernon 2003).  Official proceeding is defined as “any type
of administrative, executive, legislative, or judicial proceeding that may be
conducted before a public servant.”  Tex.
Penal Code Ann. § 1.07(a)(33) (Vernon Supp. 2010).  Additionally, the relevant definition of a “public
servant” includes “an officer, employee, or agent of government.”  Id.
§ 1.07(a)(41)(A).

Judge
Nekhom testified that after Appellant made the statement, she had to leave the
courtroom to compose herself.  She stated that it took several minutes
before she went back into the courtroom. 
After Judge Nekhom returned to the courtroom, she resumed conducting
court business.

Judge
Nekhom stated that when she had to call Appellant to the bench to discuss his
dispute with his attorney, other general court business was being conducted in
the courtroom.  She stated that the court
clerk was processing plea paperwork, the court coordinator was working on
passing cases and talking with attorneys, and attorneys were waiting for Judge
Nekhom to hear their clients’ cases.

Appellant
contends that his statement was not a disturbance.  He points to Hinton’s testimony that after
the statement, it was “business as usual” to support his contention.  However, as stated above, Judge Nekhom had to
remove herself from the courtroom after the statement, which slowed down the
court business.

Appellant
further argues that because Carey had been removed as his attorney, “it is hard
to imagine how he could have disrupted his own proceedings.”  He also points to the fact that the
proceedings had been concluded and he was on his way to the holding cell when
the statement was made to support his contention.  However, there is nothing in the record to
support Appellant’s statement that Carey had been removed as his attorney at
the time that Appellant made the statement. 
Additionally, even though Appellant was being escorted to the holding
cell when he made the statement, there is nothing in the record to show that
Judge Nekhom had stated that the proceedings had ended.  In fact, the court reporter was still
transcribing when Appellant made the statement.

Viewing
the evidence in the light most favorable to the prosecution, we hold that any
rational trier of fact could have found the essential elements of the offense
of hindering proceedings by disorderly conduct beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The evidence is thus
sufficient to support Appellant’s conviction. 
We overrule Appellant’s fourth and fifth issues.

IV.  Free Speech
Protection

In
his third and sixth issues, Appellant argues that sections 22.07 and 38.13 are
unconstitutional as applied to him because the provisions violate his right to
free speech under the First Amendment to the United States Constitution.  Both issues revolve around Appellant’s
statement, “Let’s do it, Nekhom.  It’s me
and you now.”

          When
reviewing the constitutionality of a statute, we presume that the statute is
valid and that the legislature acted reasonably in enacting the statute.  Rodriguez v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).
 The person challenging the statute must
prove its unconstitutionality.  Id.

          The First Amendment prohibits laws
that abridge freedom of speech.  U.S.
Const. amend. I. 
The First Amendment affords protection to symbolic or expressive conduct
as well as to actual speech.  Virginia v. Black, 538
U.S. 343, 358, 123 S. Ct. 1536, 1547 (2003).

          The protections afforded by the First
Amendment, however, are not absolute, and courts have long recognized that the
government may regulate certain categories of expression consistent with the
Constitution.  Id.; Coggin v. State, 123
S.W.3d 82, 87 (Tex. App.––Austin 2003, pet. ref’d).  The First Amendment permits “restrictions
upon the content of speech in a few limited areas, which are ‘of such slight
social value as a step to truth that any benefit that may be derived from them
is clearly outweighed by the social interest in order and morality.’”  Black, 538 U.S. at 358–59, 123 S. Ct. at 1547.

          The First Amendment permits a State to
ban a “true threat.”  Id. at 359, 123 S. Ct. at 1547; Watts v. United States, 394 U.S. 705,
708, 89 S. Ct. 1399, 1401 (1969). 
The Supreme Court in Black
explained that:

          “True threats” encompass those
statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a
particular individual or group of individuals. 
The speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats
“protect[s] individuals from the fear of violence” and “from the disruption
that fear engenders,” in addition to protecting people “from the possibility
that the threatened violence will occur.” 
Intimidation in the constitutionally proscribable sense of the word is a
type of true threat, where a speaker directs a threat to a person or group of
persons with the intent of placing the victim in fear of bodily harm or death.

 

Black,
538 U.S. at 359–60, 123 S. Ct. at 1548 (internal citations omitted).

          Here, Appellant’s argument is
essentially the same as his sufficiency argument above.  Appellant argues that his statement was not a
threat.  Additionally, he asserts that
his statement was not an “expression to kill or injure.”

          However, as explained above, the State
met its burden to prove that Appellant threatened Judge Nekhom.  Appellant made a threatening statement to Judge
Nekhom, “bowed his chest out” towards Judge Nekhom, and had “aggressive body
language.”  Appellant’s argument that he
was simply voicing his “frustration” does not afford him protection under the
First Amendment to threaten a trial court judge.  Accordingly, we hold that sections 22.07 and
38.13 of the penal code are not unconstitutional as applied to Appellant.  Thus, we overrule Appellant’s third and sixth
issues.

V.  Conclusion

          Having overruled Appellant’s six
issues, we affirm the trial court’s judgments.

 

 

BILL MEIER

JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  October 14, 2010











[1]Because
Appellant’s last name and his attorney’s last name are the same, we will refer
to Carey Walker as “Carey.”